UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAN-BUNKERING (AMERICA), INC.,

        Plaintiff,

-v.-

TECNOLOGIAS RELACIONADAS CON ENERGIA Y SERVICIOS ESPECIALIZADOS, S.A. DE C.V., and ARDICA CONSTRUCCIONES, S.A. DE C.V.,

        Defendants.

17 Civ. 9873 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Plaintiff Dan-Bunkering (America), Inc. ("Dan-Bunkering") brings this action alleging breach of contract against Defendants Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V. ("Tecnologias Relacionadas") and Ardica Construcciones, S.A. de C.V. ("Ardica," and together with Tecnologias Relacionadas, "Defendants"). Of the two Defendants, Tecnologias Relacionadas has not appeared in this action, while on September 14, 2018, Ardica filed an Answer that included seven affirmative defenses. Dan-Bunkering now moves to strike three of the seven defenses. In response, Ardica moves to dismiss the Complaint. For the reasons that follow, Dan-Bunkering's motion to strike is granted in part and denied in part, and Ardica's motion to dismiss is denied in its entirety.

# BACKGROUND[1]

Dan-Bunkering, a Texas corporation, is a supplier of marine fuel products, such as diesel, fuel, and lubricants. (Compl. ¶¶ 2, 8). At some point prior to August 2016, Dan-Bunkering supplied Tecnologias Relacionadas, a Mexican company, with certain marine fuel products. (*Id.* at ¶¶ 3, 8-9). Tecnologias Relacionadas failed to pay Dan-Bunkering for those products and, as a result, owed Dan-Bunkering $452,845.67. (*Id.* at ¶¶ 8-9).

On August 29, 2016, Dan-Bunkering, Tecnologias Relacionadas, and Ardica, a second Mexican company, entered into the Bunker Supply Agreement (the "Agreement"), addressing Tecnologias Relacionadas's outstanding balance, as well as the future supply of marine fuel products. (Compl. ¶ 9). In the Agreement, Ardica and Tecnologias Relacionadas agreed to repay the outstanding amount of $452,845.67 plus interest, for a total of $570,586.00. (*Id.* at ¶¶ 11-12). Section 7 of the Agreement states that "[a]t commencement of this Agreement [Tecnologias Relacionadas] and [Ardica] jointly agrees to owe [Dan-Bunkering] USD 452,845.67 plus interest to [Dan-Bunkering]." (Agreement § 7.1). In addition, Section 7 establishes a payment plan for the outstanding amount. (*Id.*). The Agreement further states that "[Tecnologias

---

[1] This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), as well as Ardica's Answer ("Answer" (Dkt. #31)). The Court also draws from the Bunker Supply Agreement ("Agreement" (Dkt. #37-2)), which is incorporated by reference in the Complaint.

For ease of reference, the Court refers to the parties' briefing as follows: the Memorandum of Law in Support of Dan-Bunkering's Motion to Strike is referred to as "Dan-Bunkering Br." (Dkt. #37); Ardica's Memorandum of Law in Opposition to Dan-Bunkering's Motion to Dismiss and in Support of its Motion to Dismiss is referred to as "Ardica Opp." (Dkt. #47); and Dan-Bunkering's Reply Memorandum of Law is referred to as "Dan-Bunkering Reply" (Dkt. #49).

Relacionadas] and [Ardica] agrees to be joint[ly] and several[ly] liable for all payments in accordance to the Payment Plan[.]" (*Id.* at § 7.3).

As of December 18, 2017, when Dan-Bunkering initiated the instant action for breach of contract, Tecnologias Relacionadas and Ardica had not paid Dan-Bunkering any portion of the outstanding amount. (Compl. ¶ 13). Between December 2017 and August 2018, the Court granted Plaintiff several extensions to effect service on Defendants in Mexico, in accordance with the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (commonly referred to as the "Hague Convention"). (Dkt. #14, 16, 18). On August 9, 2018, Ardica filed a notice of appearance in the case, and asked for an extension of time to answer or otherwise respond to the Complaint. (Dkt. #23-24). The Court granted the request. (Dkt. #25). Meanwhile, Dan-Bunkering initiated default judgment proceedings against Tecnologias Relacionadas. (Dkt. #26). The Court entered judgment against Tecnologias Relacionadas on October 9, 2018. (Dkt. #35).

On September 14, 2018, Ardica filed its Answer to the Complaint, which included seven affirmative defenses. (Dkt. #31). On October 26, 2018, Dan-Bunkering filed a motion to strike Ardica's first, second, and third affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). (Dkt. #36-37). Ardica filed its memorandum of law in opposition to Dan-Bunkering's motion on January 22, 2019. (Dkt. #46). In addition to responding to Dan-Bunkering's motion, Ardica moved to dismiss the Complaint for lack of

personal jurisdiction, *forum non conveniens*, and failure to state a claim. (Dkt. #46-47). On February 15, 2019, Dan-Bunkering filed its reply in support of its motion to dismiss and opposition to Ardica's motion to dismiss. (Dkt. #49). As such, the motion is ripe for the Court's consideration.

**DISCUSSION**

**A.     Applicable Law**

    **1.     Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

In considering a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat. Res. Def. Council* v. *Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). "[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted); *accord Sokolowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013). A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). Where subject matter jurisdiction is contested, a district court may consider evidence outside the pleadings, such as affidavits and exhibits. *See Zappia Middle East Constr. Co.* v. *Emirate of Abu*

*Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *accord Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014).

### 2. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)

When a defendant brings a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam) (citation omitted). All jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). However, the court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation[.]" *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *see also Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

District courts deciding motions to dismiss for lack of personal jurisdiction typically engage in a two-part analysis. *First*, the court assesses

whether there is "a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). In making this determination, the court "applies the forum state's personal jurisdiction rules" unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks and citations omitted). *Second*, if there is a statutory basis for personal jurisdiction, the court must decide whether the exercise of jurisdiction comports with due process. *Sonera Holding B.V.* v. *Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam).

It is well established that "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located." *Spiegel* v. *Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010). New York's long-arm statute authorizes courts to exercise personal jurisdiction "over any non-domiciliary … who in person or through an agent … transacts any business within the state," so long as the cause of action "aris[es] from" that transaction. N.Y. C.P.L.R. § 302(a)(1). Accordingly, a court may exercise personal jurisdiction over a non-domiciliary if two conditions are met: "first, the non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity." *Aquiline Capital Partners LLC* v. *FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (quoting *CutCo Indus., Inc.* v. *Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

### 3. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

### 4. Motions to Strike Under Federal Rule of Civil Procedure 12(f)

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are not to be

granted "unless there is a strong reason for so doing." *Nungesser* v. *Columbia Univ.*, No. 15 Civ. 3216 (GHW), 2017 WL 1102661, at *1 (S.D.N.Y. Mar. 23, 2017) (internal quotation marks omitted). "In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky* v. *Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Courts in this District have found that to prevail on a motion under Rule 12(f), the moving party must show that "[i] no evidence in support of the allegations would be admissible; [ii] that the allegations have no bearing on the issues in the case; and [iii] that to permit the allegations to stand would result in prejudice to the movant." *Landesbank Baden-Württemberg* v. *RBS Holdings USA, Inc.*, 14 F. Supp. 3d 488, 497 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

**B.  Discussion**

### 1.  The Court Has Subject Matter Jurisdiction over the Instant Action

First, the Court addresses Dan-Bunkering's motion to strike Ardica's affirmative defense of lack of subject matter jurisdiction. (Dan-Bunkering Br. 1, 5-6). As a practical matter, Dan-Bunkering's motion is unnecessary: Ardica has not moved to dismiss the Complaint for lack of subject matter jurisdiction. Further, subject matter jurisdiction may be raised at any time, including by the Court *sua sponte*. Thus, as a sister court in this Circuit recently noted, "even if subject matter jurisdiction [were] not lacking in this

case, striking this defense would accomplish nothing." *Allstate Ins. Co.* v. *Long Island Power Auth.*, No. 14 Civ. 444 (JS) (SIL), 2015 WL 867064, at *2 (E.D.N.Y. Feb. 27, 2015). Precisely for this reason, the Court denies Dan-Bunkering's motion to strike Ardica's second affirmative defense. *See Brill* v. *Prudential-Bache Sec., Inc.*, No. 84 Civ. 0846 (PKL), 1985 WL 8037, at *6 (S.D.N.Y. July 29, 1985) ("Since the subject matter jurisdiction of the court may be raised at any time, even by the court *sua sponte*, I do not understand what striking the defense would accomplish.").

Nevertheless, the Court briefly addresses the issue, and begins by noting that neither party contests that the diversity jurisdiction requirements have been satisfied. *See* 28 U.S.C. § 1332. *First*, complete diversity exists between the parties: Plaintiff is a Texas corporation, while Defendants are two Mexican companies. (Compl. ¶¶ 2-4). *Second*, the amount in controversy — $570,586.00 — exceeds $75,000. (*Id.* at ¶¶ 5, 21). As such, this Court has federal diversity jurisdiction over this action.

The crux of Ardica's affirmative defense, and Dan-Bunkering's subsequent motion, was whether a state statute, specifically the New York Business Corporation Law ("BCL"), could divest this Court of subject matter jurisdiction. (Dan-Bunkering Br. 5-6). In its Answer, Ardica argued that the BCL does divest this Court of subject matter jurisdiction, although it has

abandoned that argument at the pleading stage and has not moved to dismiss the Complaint on that ground. (Answer 5-7).[2]

The specific provision of the BCL at issue is § 1314(b), which limits the circumstances under which New York state courts may hear disputes between two foreign corporations. *See* BCL § 1314(b). The statute enumerates five exceptions to the general rule that "an action or special proceeding against a foreign corporation may [not] be maintained by another foreign corporation of any type or kind or by a non-resident." *Id.* Therefore, Ardica originally argued in its Answer, because Plaintiff and Defendant are both foreign corporations, this Court is jurisdictionally barred from hearing the instant action. (Answer 5-7). Critically, in raising this defense, Ardica argues that BCL's jurisdictional prohibition is equally applicable in both state and federal courts. (*Id.* at 7). As detailed in this section, the Second Circuit has clearly held otherwise.

The law is clear that New York "door closing" statutes, such as the BCL, do not divest a federal court of jurisdiction. *See Netherlands Shipmortgage Corp.* v. *Madias*, 717 F.2d 731, 735 (2d Cir. 1983); *Grand Bahama Petroleum Co.* v. *Asiatic Petroleum Corp.*, 550 F.2d 1320, 1325 (2d Cir. 1977) ("In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to the acts of states which have no power to enlarge or to contract the federal jurisdiction." (internal citations and

---

[2]  The Court notes that Ardica, in its opposition brief, engages in the subject matter jurisdiction analysis in an attempt to "bolster" its *forum non conveniens* defense. (*See* Ardica Opp. 14-16).

10

quotations omitted)). Instead, these statutes affect "the legal capacity of a foreign corporation ... to maintain an action in New York courts." *Netherlands Shipmortgage Corp.*, 717 F.2d at 735. Accordingly, the BCL does not strip this Court of its subject matter jurisdiction over the instant action.[3]

### 2. The Court Has Personal Jurisdiction over Ardica

Next, Dan-Bunkering moves to strike Ardica's first affirmative defense of lack of personal jurisdiction. (Dan-Bunkering Br. 6-8). In response, Ardica moves to dismiss the Complaint for lack of personal jurisdiction. (Ardica Opp. 3-11).

Dan-Bunkering argues that the Court's exercise of personal jurisdiction over Ardica is proper because both parties are subject to the Agreement's forum selection clause. (Pl. Br. 6-8; *see also* Compl. ¶ 6). In the Agreement, the parties consented to exclusive jurisdiction in New York and explicitly waived any personal jurisdiction defense. (Agreement § 15.1). Section 15 of the Agreement contains a mandatory forum selection clause, explicitly stating: "The Parties hereby consent[] to the exclusive jurisdiction of any state or federal court situated in New York, New York, and waive[] any objection based on lack

---

[3]   Although the BCL cannot divest a federal court of jurisdiction, as briefly discussed, federal courts sitting in diversity must apply the BCL. *See Calzaturificio Giuseppe Garbuio S. A. S.* v. *Dartmouth Outdoor Sports, Inc.*, 435 F. Supp. 1209, 1210 (S.D.N.Y. 1977). Therefore, non-compliance with the BCL — while not a jurisdictional bar — may render a suit legally insufficient and be grounds for dismissal. In four sentences, Dan-Bunkering argues that this instant action fits into one of the BCL's enumerated exceptions because it conducts business in New York. (Dan-Bunkering Reply 10). However, Ardica has not moved to dismiss the Complaint on the ground of non-compliance with the BCL. In addition, Ardica has not had the opportunity to respond to Dan-Bunkering's argument. For those reasons, and especially in light of Dan-Bunkering's limited briefing, the Court declines to decide the issue here.

11

of personal jurisdiction, improper venue or forum non conveniens[.]" (*Id.*). In light of that clause, Dan-Bunkering asserts, this Court has personal jurisdiction over Ardica.

Ardica does not address, or even acknowledge, Dan-Bunkering's argument — or the forum selection clause — in its brief in opposition. Therefore, it is within this Court's discretion to find that Ardica has effectively conceded the issue. *See Jackson* v. *Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Simon* v. *City of New York*, No. 14 Civ. 8391 (JMF), 2015 WL 4092389, at *2 (S.D.N.Y. 2015) ("[W]hether or not Defendants' arguments had merit, it was Plaintiff's obligation to address the issue, on pain of their claim being deemed abandoned." (collecting cases)); *Lipton* v. *Cty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (collecting cases)). Nevertheless, for completeness, this Court independently evaluates the issue of personal jurisdiction.

It is well settled that "[p]arties can consent to personal jurisdiction through forum[ ]selection clauses in contractual agreements." *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). Here, Dan-Bunkering and Ardica consented to such jurisdiction in this District when they executed the Agreement. The Agreement contains a mandatory forum selection clause,

which explicitly states that the parties "consent[] to the exclusive jurisdiction of any state or federal court situated in New York, New York." (Agreement § 15.1). *See Phillips* v. *Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."). The language of the Agreement's forum selection clause is nearly identical to other clauses that have been found to confer personal jurisdiction. *See, e.g., Alpha Capital Anstalt* v. *Oxysure Sys., Inc.*, 252 F. Supp. 3d 332, 338 (S.D.N.Y. 2017) (finding that a defendant is subject to personal jurisdiction in this District where the defendant signed forum selection clause stating that each party "submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York … and hereby irrevocably waives … any claim that it is not personally subject to the jurisdiction of any such court").

Although forum selection clauses are presumed to be enforceable, that presumption may be rebutted if the opposing party makes a sufficient showing that the clause (i) was not reasonably communicated to the party resisting enforcement; (ii) is permissive rather than mandatory; or (iii) does not encompass the claims and parties involved in the suit." *See Phillips*, 494 F.3d at 383. In addition, the clause may be invalid if "enforcement would be unreasonable or unjust, or … the clause was invalid for such reasons as fraud or overreaching." *Id.* at 384-85 (internal quotation marks omitted). Ardica, in its opposition brief, does not acknowledge the forum selection clause, much

13

less make a sufficiently strong showing of any of the factors that could lead the Court to invalidate the clause.

Instead, Ardica argues that, as a Mexican company that does not do business in New York, it is not subject to the Court's jurisdiction under New York's long-arm statute. (Ardica Opp. 4-11). That briefing strategy is fatal to Ardica's motion to dismiss. "Where an agreement contains a valid and enforceable forum selection clause ... it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *See Exp.-Imp. Bank of U.S.* v. *Hi-Films S.A. de C.V.*, No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010). Ardica has failed to rebut Dan-Bunkering's *prima facie* showing that jurisdiction exists on the basis of the forum selection clause. For that reason, the Court denies Ardica's motion to dismiss on the basis of lack of personal jurisdiction and grants Dan-Bunkering's motion to strike the first affirmative defense.

### 3. The Court Denies Ardica's Motion to Dismiss for *Forum Non Conveniens*

Ardica's motion to dismiss the Complaint pursuant to the doctrine of *forum non conveniens* fails for a similar reason: Ardica ignores the mandatory forum selection clause. Accordingly, Dan-Bunkering's motion to strike the defense is granted, and Ardica's motion to dismiss the Complaint is denied.

To review, the Agreement contains a mandatory forum selection clause, which includes an explicit agreement between the parties to "waive[] any objection based on lack of personal jurisdiction, improper venue or forum non conveniens[.]" (Agreement § 15.1). In its brief in opposition, Ardica engages in

14

the traditional *forum non conveniens* analysis without any consideration of the forum selection clause. (Ardica Opp. 11-16). Here again, Ardica's analysis — including its steadfast refusal even to acknowledge its adversary's argument — is fatal to its affirmative defense.[4]

In light of the Agreement's mandatory forum selection clause, the *forum non conveniens* analysis is substantially modified. *See Martinez* v. *Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014). "[T]he doctrine's usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum." *Id.* As discussed *supra*, the clause is presumptively enforceable if the clause is mandatory, was reasonably communicated to Ardica, and the claims and parties to the dispute are subject to the clause. *See Magi XXI, Inc.* v. *Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013). Here, Ardica does not contest that the presumption of enforceability applies to the forum selection clause. Accordingly, the Court will enforce the clause unless "the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.*

---

[4] The Court notes that even under a traditional *forum non conveniens* analysis, Ardica's motion would not survive. The Second Circuit has established a three-part test. In the first step, the district court must determine the "degree of deference properly accorded the plaintiff's choice of forum." *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). Next, the district court "considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id.* Finally, the district court must "balance[] the private and public interests implicated in the choice of forum." *Id.* Ardica does not address the third factor in its opposition brief.

15

At the risk of repeating itself, the Court notes that Ardica has not made a sufficiently strong showing to rebut the presumption of enforceability. Even if the Court were to import Ardica's arguments from its traditional *forum non conveniens* analysis into the proper forum selection clause analysis, its motion would not succeed. For example, Ardica claims that New York is an inappropriate forum because none of the parties is a New York resident; the maintenance of the action in New York would create unfair hardship on Ardica's legal representative, who has no office in this District; and critical documents and parties are located in Mexico. (Ardica Opp. 12-14). None of these facts, alone or in combination, rises to the level of unjust or unreasonable enforcement. Requiring non-resident parties to litigate in accordance with the forum selection clause may cause difficulties, but that does not indicate that the parties should not be bound by the agreement they signed. *See U.S. Bank Nat. Ass'n* v. *Ables & Hall Builders*, 582 F. Supp. 2d 605, 613 (S.D.N.Y. 2008) (rejecting "inconvenience and economic hardship as a basis for voiding a forum selection clause," even though both parties resided outside New York and none of the events giving rise to the suit occurred in New York).

In sum, Ardica has failed to show that the forum selection clause was unreasonable, unjust, fraudulent, or an overreach; therefore, Dan-Bunkering's (indeed, the parties') choice of forum controls. The Court denies Ardica's motion to dismiss on the basis of lack of *forum non conveniens* and grants Dan-Bunkering's motion to strike the third affirmative defense.

### 4. The Court Denies Ardica's Motion to Dismiss for Failure to State a Claim

Finally, as somewhat of an afterthought, Ardica moves to dismiss the Complaint for failure to state a claim. (Ardica Opp. 16-17). Ardica argues that Dan-Bunkering's "bare-bones Complaint" fails to allege (i) "what exactly was provided by Dan-Bunkering to any of the defendants" (Ardica Opp. 16); (ii) "what consideration was provided to Ardica to assume a debt that it was not responsible for" (*id.*); and (iii) "what damages it has sustained as result of the alleged breach of the Agreement" (*id.*). Once again, the Court disagrees.

To survive a motion to dismiss, a party claiming breach of contract "need only allege [i] the existence of an agreement, [ii] adequate performance of the contract by the plaintiff, [iii] breach of contract by the defendant, and [iv] damages." *Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal citations and quotations omitted). Dan-Bunkering has done just that. Specifically, Dan-Bunkering has pleaded that (i) on August 29, 2016, the parties entered into the Agreement (Compl. ¶ 9); (ii) Dan-Bunkering performed under the Agreement (*id.* at ¶¶ 8, 14); (iii) Ardica breached the contract when it failed to comply with the Payment Plan (*id.* at ¶¶ 9-13); and (iv) Dan-Bunkering suffered $570,586.00 in damages as a result (*id.* at ¶ 19).

With regard to the question of consideration, the issue is not properly decided at the motion to dismiss stage. "[T]he prevailing rule is that consideration need not be pleaded in the complaint, and that lack of

consideration is best treated as an affirmative defense." *Centauro Liquid Opportunities Master Fund, L.P.* v. *Bazzoni*, No. 15 Civ. 9003 (LTS) (SN), 2016 WL 5719793, at *5 (S.D.N.Y. Sept. 30, 2016) (internal citations and quotations omitted). Dismissal based on inadequacy of consideration is not appropriate at this time. Accordingly, Ardica's motion to dismiss for failure to state a claim is denied.

## CONCLUSION

For the reasons set forth above, Ardica's motion to dismiss is DENIED. Dan-Bunkering's motion to strike is DENIED as to Plaintiff's affirmative defense of lack of subject matter jurisdiction and GRANTED in all other respects. The Clerk of Court is directed to terminate the motions at docket entries 36 and 46. The parties are hereby ORDERED to submit a proposed Case Management Plan for the Court's consideration on or before May 15, 2019.

SO ORDERED.

Dated: April 26, 2019
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge